In re AIRWALK INTERNATIONAL, LLC, a Delaware Limited Liability Company, Debtor.

Congress Financial Corp., Movant,

v.

Airwalk International, LLC, Respondent.

No. 03–32709–HRT.

United States Bankruptcy Court, D. Colorado.

Dec. 11, 2003.

Michael Noone, Denver, CO, Van C. Durrer, II, Skadden, Arps, Slate, Meagher & Flom, LLP, Los Angeles, CA, for Debtor.

Paul R. Franke, III, Amy E. Arlander, Denver, CO, Christopher D. Glos, Paul F. Donsbach, Irvine, CA, for Petitioning Creditor.

Kelly J. Sweeney, Denver, CO, for U.S. Trustee.

## ORDER GRANTING RELIEF FROM STAY

HOWARD R. TALLMAN, Bankruptcy Judge.

This matter is brought under § 362 for relief from stay filed by Congress Financial Corp. against the Alleged Debtor to allow a foreclosure action to proceed to its conclusion in the state of New York. The Court is aware that the Alleged Debtor's funding, for the purposes of this pending involuntary case will end as of December 12, 2003, so the Court has issued this ruling to advise the parties as quickly as possible of the Court's decision, subject to further supplementation if necessary. As a result of a final hearing on this matter held on December 8, 2003, the Court makes the following findings and conclusions.

Airwalk International, LLC, ("Airwalk") is the Alleged Debtor. An involuntary case was commenced against it under chapter 11 on November 13, 2003. The petitioning creditors are Guo Qiang Mikeda (Qingdao) Sports Commodities, Co., Ltd. ("Mikeda"); Suzhou Hae Kang Shoes Co., Ltd. ("Suzhou"); and ASE Industries Co. Ltd. ("ASE"). Airwalk has not yet responded to the involuntary petition and such response date has been extended until further order of this Court.

Airwalk's assets consist principally of patents, trademarks and the licensing agreements that it has entered into with others to allow them to produce goods under the various trademarks.

Congress Financial Corp. ("Congress") is the first priority secured creditor with a perfected security interest in substantially all of Airwalk's Assets (the "Collateral"). Congress had provided financing to Airwalk's predecessor, Items International,

Inc. ("Items"). On July 1, 1999, Airwalk executed a Restated Term Promissory Note to Congress in the principal amount of $18,333,333.38. As of October 31, 2003, the debt owed by Airwalk to Congress was $14,022,568.67.

Sunrise Capital Partners, LP, ("Sunrise") is the 100% owner of Airwalk's stock. It is the second priority secured creditor and also holds a perfected security interest in substantially all of Airwalk's assets. Pursuant to a Loan and Security Agreement dated July 1, 1999, Sunrise agreed to provide Airwalk with a revolving line of credit up to $15 million. At the same time, Sunrise entered into a Subordination and Intercreditor Agreement with Congress subordinating its debt to Congress. Several amendments to the initial Loan and Security Agreement were entered into which allowed Airwalk to increase its debt to Sunrise. As of the petition date, the balance of Airwalk's debt to Sunrise was approximately $91 million.

A foreclosure proceeding has been commenced in New York State and a receiver has been appointed in that case. Pursuant to the New York foreclosure Order, the receiver has conducted the foreclosure and received a bid for the Collateral from Collective Licensing, LLC, ("Collective") for $26 million. The sale to Collective had not been completed at the time that the involuntary case was commenced. The Collective bid expires on December 30, 2003, if the sale is not consummated prior to that date. Collective is an entity formed by Sunrise for the purpose of purchasing the Airwalk assets. The Collective bid was the only qualified bid submitted to the receiver. The Collective bid is being financed by Congress and Sunrise.

Airwalk and Sunrise consent to relief from stay as requested in Congress' motion. An objection to the motion for relief was filed by ASE, Suzhou and Hwa Seung Shoe Manufacturing Dalian Co., Ltd. (the "ASE Creditors Group"). An objection to the motion for relief was also filed by Mikeda.

## DISCUSSION

As a preliminary matter, the Court took the admission of declarations from J.W. Song (Exhibit U) and Guo Qiang (Exhibit OO) under advisement. These declarations were offered into evidence by the objecting creditors without the declarants being available for cross examination on the contents of the declarations. Movant and Sunrise objected to admission on that basis. Given the burdens placed upon the parties by the expedited nature of the hearing; the fact that the declarants are based out of South Korea and China; and the fact that this is a trial to the Court as opposed to a jury, the Court will admit the objecting creditors' Exhibits U and OO into evidence. The Court acknowledges the fact that Congress and Sunrise have not had an opportunity to cross-examine the declarants and takes that fact into account in the weight that the Court will accord to that declaration testimony.

Congress commenced this action under § 362 on November 18, 2003. 11 U.S.C. Section 362(d) provides, in relevant part

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay-

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

(2) with respect to a stay of an act against property under subsection (a) of this section, if-

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization ...

The burden of proof in this matter is set out in 11 U.S.C. § 362(g) as follows:

In any hearing under subsection (d) or (c) of this section concerning relief from the stay of any act under subsection (a) of this section-

(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

(2) the party opposing such relief has the burden of proof on all other issues.

■ The objections filed by the ASE Creditors Group and Mikeda claim

1. that Airwalk has equity in its Collateral;

2. that the Collateral is necessary for an effective reorganization;

3. that the Sunrise debt should be equitably subordinated to the debt of the unsecured creditors; and

4. that the Sunrise debt should be recharacterized as an equity contribution.

The Court notes that recharacterization has not been treated by the creditors as a separate defense to the relief from stay motion, but the Court views these as two separate issues. A debt which is subordinated remains a debt, whereas, a debt that is recharacterized as a capital contribution is no longer treated as a debt and subordination becomes a moot issue.

Although, the courts are not unanimous as to the permissibility of the equitable subordination or recharacterization defenses put forth by the objecting creditors, at the preliminary hearing on this motion to lift stay, the Court determined that the procedure set forth in *In re Poughkeepsie Hotel Associates, Joint Venture,* 132 B.R. 287 (Bankr.S.D.N.Y.1991), for consideration of such defenses was appropriate.

At that time, the Court stated that it would allow the objecting creditors to make a prima facie case with respect to the stated defenses, but would make no binding decisions on the merits of those issues. The Court stated that it would consider the evidence presented with respect to those issues as factors to be considered in its determination of whether or not to grant the requested relief. In this Court's view, the weight to be accorded that evidence depends upon the nexus between that evidence and the actions of Congress, the Movant in this matter. The Court notes that virtually all of the objecting creditors' evidence and arguments with respect to those issues were directed to the actions of Airwalk and Sunrise. The Court takes the evidence into consideration. However, the Court accords that evidence less weight than it might otherwise receive because of its remoteness from the actions of the Movant.

The Court finds that Congress has carried its burden of proof in this matter.

*Airwalk Has No Equity in the Collateral*

■ Congress has presented evidence of the efforts engaged in by Legacy Partners Group, LLC, in March of 2003 to market Airwalk's assets prior to commencement of the foreclosure action. Over 90 parties were contacted in an effort to market the assets. Seventeen parties returned a confidentiality agreement and had an opportunity to examine a confidential information packet. Nine parties requested further due diligence information. One expression of interest was received discussing a purchase price, as of May, 2003, in the $12 million to $18 million range, which at the time was less than the debt owed Congress.

Congress has presented evidence of the foreclosure proceedings initiated in New York State with respect to Airwalk's as-

sets. A high bid of $26 million has been received by the receiver in the foreclosure proceeding and a purchase agreement has been entered into at that price. The objecting creditors presented testimony to the effect that, in the past, Sunrise had an internal "model" which valued the Airwalk assets at $40 million. However, no evidence was provided as to the assumptions that underlie such valuation. The best evidence that is before the Court of the value of Airwalk's assets is the $26 million bid received by the receiver in the foreclosure action from Collective. Congress presented uncontroverted evidence that the total secured debt owed to Congress and Sunrise is in excess of $105 million. Based upon the amount of the secured debt and the value of the Collateral, the Court concludes that Airwalk has no equity in the Collateral.

*The Collateral Is Not Necessary to an Effective Reorganization Because Airwalk Lacks the Ability to Reorganize*

■ The objecting creditors presented evidence that Airwalk's assets include various licensing agreements that do provide a monthly cash flow to Airwalk, but this evidence is inadequate to demonstrate an ability to reorganize absent evidence of Airwalk's monthly cash requirements. Congress has presented evidence that Airwalk has no operating cash and that the receiver's budget to maintain the Collateral results in a monthly burn rate of almost $400,000.

Airwalk is on life support and is only kept alive by funding from Congress for the limited purpose of allowing Airwalk's assets to be administered by a receiver appointed by the New York Court and liquidated to pay Congress' debt. Congress is under no obligation to fund Airwalk. It *may* choose to do so to protect its Collateral so it can be further administered and sold; but that is its own choice.

Congress has said it will fund the receiver to keep Airwalk's necessary operations going.

As things stand today, Airwalk's business is, for most ongoing operational purposes, shut down. Airwalk is in stasis, a skeletal operations mode to preserve asset value at the least cost. Airwalk cannot support itself. Employees need to be paid. Having them work for nothing as the objecting creditors have suggested is not a viable solution both under state law or Bankruptcy Court operating requirements. At best, Airwalk is a *dead man walking,* notwithstanding that the involuntary petition was filed under chapter 11. Reorganizing this debtor is not a reasonable possibility. Even a Chapter 7 would be unmanageable for an independent trustee without funding from Congress or some other source.

In bankruptcy, time costs money. Airwalk doesn't have it. The objecting creditors are not offering any funds. Congress or Sunrise cannot be somehow forced to provide funds, especially for the purposes of allowing the objecting creditors the time to further investigate their equitable subordination case, or to see if there is a better deal to be had and use Congress' funding to try and second-guess the business judgments already made by Congress, Sunrise and Airwalk. Consequently, the assets cannot be necessary to a reorganization which is not feasible.

*Congress Lacks Adequate Protection*

■ The Court also finds that the interests of Congress in the Collateral are not adequately protected. The evidence established that for the Collateral to maintain value, it must receive support. The Collateral primarily consists of patents, trademarks and license agreements. The license agreements require certain acts to be performed by Airwalk, as licensor, to protect and preserve the value of the Col-

lateral. The evidence establishes Airwalk currently lacks the resources to preserve and protect the value of the Collateral. If Airwalk's obligations and the licensees' needs are not met, the value of the Collateral will quickly decline.

*The Objecting Creditors Have Not Made a Prima Facie Case for Their Entitlement to Equitable Subordination*

■ The creditors' equitable subordination argument is primarily based on allegations

1. that Sunrise exercised control over Airwalk; and

2. that Airwalk induced the objecting creditors to set aside production capacity and to continue providing product by misrepresenting its intention to pay its past-due debts and failing to inform the objecting creditors of Airwalk's decision to shift production to different manufacturers.

The evidence presented by way of affidavits, documentary submissions, and the witnesses at hearing establishes:

1. That Sunrise continued to provide funds to Airwalk, based on Airwalk's projected cash needs through approximately October of 2001.

2. That, after that date, the cash provided by Sunrise became sporadic and inadequate to satisfy Airwalk's needs.

3. That Sunrise's cash infusions into Airwalk were structured and documented as loans to Airwalk.

4. That Sunrise maintained a presence on the Airwalk board of directors.

5. That Airwalk's business relationships with the objecting creditors arose in the year 2000, subsequent to the time Airwalk granted a security interest in substantially all of its assets to Sunrise.

6. That the objecting creditors were informed that Airwalk was experiencing financial difficulties and that it could not pay for product under the letter of credit arrangement that had been in effect through May of 2001.

7. That the objecting creditors were provided with true and correct audited financial information from the debtor whenever that information was requested.

8. That Sunrise endeavored to insure, through its loans to Airwalk, that Airwalk's cash needs were satisfied from April of 1999 through October of 2001.

9. That most, if not all of the evidence presented by the objecting creditors relative to the continuation of their business relationship centered upon conversations with and actions taken by Airwalk and not Sunrise.

After Sunrise poured funds into a company that was losing money for 2½ years, the Court finds nothing remarkable in the fact it stopped doing so. The Court finds nothing in Sunrise's presence on Airwalk's board of directors and its loans to Airwalk that rises to the level of inequitable conduct toward the objecting creditors. This is true particularly since Sunrise's ownership of Airwalk's stock and the credit facility between Sunrise and Airwalk were existing facts for several months prior to the time Airwalk commenced its business relationship with the objecting creditors. Even assuming, for the sake of argument, that the objecting creditors had proven that Airwalk behaved inequitably toward the objecting creditors, they have failed to show a nexus between Airwalk's behavior and Sunrise sufficient to justify subordinating Sunrise's debt to the unsecured

creditors, and, it especially follows, to prevent Congress from receiving relief from stay.

The Court recognizes that Sunrise is the 100% shareholder of Airwalk. It also recognizes that a new wholly owned subsidiary of Sunrise will be the purchaser of the Airwalk assets at the foreclosure sale. The upshot of the foreclosure will be that the new company will now own the former Airwalk assets unburdened by Airwalk's debt. But, the record before the Court does not contain evidence of a disregard of corporate formalities and corporate separateness that could justify this Court ignoring the separate existence of the various business entities involved. Furthermore, if the objecting creditors have causes of action, cognizable under non-bankruptcy law, against Sunrise, lifting the stay as to Congress does not deprive them of the opportunity to pursue those remedies.

*The Objecting Creditors Have Not Presented Evidence That Would Justify Recharacterization of the Sunrise Debt as a Capital Contribution*

■ Factors relevant to a Court's recharacterization of debt as equity are:

1. Status of the lender as an insider or fiduciary

2. Amount of initial operating capital

3. Length of time the business entity was in operation

4. Whether or not the transactions were treated as loans when they were done. *U.S. v. Colorado Invesco, Inc.*, 902 F.Supp. 1339, 1342 (D.Colo.1995).

■ Sunrise is an insider of Airwalk as that term is defined in § 101 of the Code. However, the Court cannot determine if Airwalk was undercapitalized. The Court has seen no evidence of what capital may have been infused into the company at the time of its acquisition, and the Court has seen no evidence of what the operating capital requirements of a business in Airwalk's industry may be. Airwalk began receiving loans from Sunrise at the time of its acquisition. The transactions were always treated by the parties as loan advances.

The evidence was that these funds were always understood between Airwalk and Sunrise as loan transactions. This is not a case where funds were infused into a company and then promissory notes were drawn up as bankruptcy loomed. The ability of a court to recharacterize a transaction that, on its face, is a valid debt, assumes a circumstance where, in equity, an insider is compelled to treat its infusion of funds as a capital contribution. It also assumes that the complaining creditor was harmed by the loan characterization at its inception and not through the magic of hindsight.

The harm to the objecting creditors was, in some respects, self-inflicted. They were not creditors at the time Sunrise began loaning money to Airwalk. When Airwalk could not longer maintain the letter of credit payment arrangement, the objecting creditors knew Airwalk was in trouble. They were provided with financial information from Airwalk. Sunrise's security interests were properly perfected and were a matter of public record. These creditors gambled on Airwalk's continued viability. While, in this instance, it turned out badly, it may just as well have turned out differently and to the creditors' advantage. That is the nature of conducting business in a free economy. The point is that they gambled with adequate, if not full, information normally available to creditors. They made a business judgment. There is

**42**

no evidence before this Court to compel the conclusion that these creditors were victims of trickery, deceit or inequitable conduct on the part of Sunrise or Congress that could justify the Court in ignoring the form and structure of the debt transaction that is before it and find that the transaction should be treated as something else entirely. Accordingly, it is

ORDERED that Congress' motion for relief from stay is GRANTED.

FURTHER ORDERED that in light of the above, Congress' Motion to excuse the Receiver's Turn Over of Airwalk's Assets is GRANTED; and

FURTHER ORDERED that, as to the involuntary petition, the Court will allow the Alleged Debtor until **December 23, 2003** to file its response to the petition.

FURTHER ORDERED that this Order shall be served on local counsel for Congress Financial Corporation by facsimile transmission and said counsel shall likewise serve copies of this Order on all other participating parties or their counsel on or before December 12, 2003 at 5:00 P.M. (MST).

FURTHER ORDERED that Counsel shall file on or before December 16, 2003, a Certificate verifying service consistent with this Order.